Frederick A. Dickinson, J.
This is a CPLR article 78 proceeding to review the denial of a special use permit by the respondent zoning board of appeals. Respondent has moved to dismiss the proceeding on various grounds. By interim decision dated December 1, 1976, this court permitted intervention in this proceeding by a number of individuals who are neighboring property owners to the premises which are the subject of this application.
The petitioners applied to the respondent, board of appeals, for a special use permit for the establishment of a "school” for the mentally retarded. The zoning board of appeals after public hearing and after the receipt of the recommendations of the planning board denied the application based upon their conclusion that there was an inadequate submission and the specific finding that the proposed use was a nonpermitted use in the district in that the proposed use did not come within the definition of "private school” as contained in the zoning ordinance. In the interim decision the court indicated that it would face the issue on the substantive merits rather than consider the adequacy of the submission. All sides have submitted briefs on the issue.
The zoning ordinance of the town permits private schools to exist in residential districts conditioned upon obtaining a special use permit. There is no category listed under business or industrial uses which would permit petitioners’ "school” unless it is permitted within a residence district.
Petitioners urge that the proposed use falls within the definition of school as found in the case of Incorporated Vil. of Brookville v Paulgene Realty Corp. (24 Misc 2d 790). The court in Paulgene however was defining a school after hearing expert testimony from educators as to what they felt were the criteria for an institution to be termed a "school”. This evidence was taken in the absence of a definition of "school” *33 in the zoning ordinance which was applicable to that case. The petitioners also urge that the proposal is a school within the definition of the New York State Mental Hygiene Law and that it is a school within the normal understanding of the term school.
Here however, the court is furnished with a definition of "school” in the zoning ordinance and the authority of the zoning board of appeals is circumscribed by that definition. (2 Anderson, NY Zoning Law and Practice, § 19.14; Hartnett v Segur, 21 AD2d 132; see, also, Matter o Plotinsky v Gardner, 27 Misc 2d 681 and cases cited thereunder.) The ordinance defines school, private as "a kindergarten, primary or secondary school furnishing a comprehensive curriculum of academic instruction”.
Since the court is rendering this decision under a motion to dismiss, the allegations of the petition will be accepted as true. Petitioners have alleged:
(a) The aims, purposes, and general description of petitioners’ school are set forth in the introductory statement of petitioners’ program proposal, as follows:
"The population of Westchester County is approximately one million. In spite of the County’s high average income, the percentage of people in the poverty group is about that of the nation as a whole.
"The Developmental Centers at Wassaic, Letchworth and Willowbrook are providing residential care to more than 750 Retarded Citizens from Westchester County. It is a top-priority, unmet need that these persons be provided with resettlement residential programs and community services within their own county.
"The Whitehill Institute* will serve only the residents of Westchester County. Residents of other counties will be considered for admission only during those times when, and if, there are no applicants from the County of Westchester.
"As a residential school for Severely-to-Moderately Mentally Retarded Adults of both sexes, between the ages of 21 and 35 at the time of admission, the facility will provide residential, respite, and community habilitative services. Although this is a large facility, the programming is geared to the utilization of, and coordination with, all community services of the *34 Westchester Developmental Network, avoiding an institutional environment.
"The overall objective of the individualized plan of care is to attain or maintain the optimal, physical, intellectual, emotional, social, and vocational functioning of which the client is presently or potentially capable.
"The resident population will not exceed one hundred (100) without the prior approval of Westchester Developmental Services and the Department of Mental Hygiene.”
(b) "Such program proposal for petitioners’ school will provide comprehensive care, treatment, training, and education of the mentally retarded residents and can in no way be considered merely a custodial institution. The program includes briefly, psychiatric and medical diagnosis, treatment, and counseling, remedial education principally in the areas of language and motor abilities, self-care and prevocational and work training, and recreational programs for meeting and developing social and emotional needs, all to be provided by qualified staff personnel, and all described in greater detail in such Program Proposal.”
While the aims, program and description of the proposed facility are laudable and arguably fit the definition of school as outlined in Paulgene (24 Misc 2d 790, supra), they certainly do not in any way, shape or form comply with the limited definition of private school contained in the zoning ordinance. Accordingly, this court cannot hold that the action of the zoning board of appeals in denying petitioners a special use permit was arbitrary or capricious and this branch of the petition must be dismissed.
The second item of relief requested seeks to declare the zoning ordinance to be "an illegal,unreasonable, arbitrary, and confiscatory use of the police power and violates the Constitution of the State of New York in so far as it may appear to bar the use of petitioners’ property in the Town of New Castle for a school for the mentally retarded of the type proposed by petitioners as described in their application to the zoning board, because such exclusion of petitioners’ school for the mentally retarded bears no substantial relation to the health, safety, morals, or general welfare of the community.”
The absence of the town as a party defendant precludes the court from considering the merits of this claim and the claim must be dismissed without prejudice in the absence of a *35 necessary party. (Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 458.)
The third item of relief depends upon one or both of the first two being sustained.
The petition is in all respects dismissed.

 The name of petitioners’ school has since been changed to "Mount Kisco Institute for the Mentally Retarded.”